**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EDIE M. S.,

Claimant,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Respondent.

No. 22 C 6777

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Edie M.S.[1] ("Claimant" or "Plaintiff") seeks judicial review of the final decision of the Acting Commissioner of Social Security[2] ("Commissioner") denying her application for a period of disability and disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 23]. After reviewing the record and the parties' arguments, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 12] is granted, and the Defendant's Motion for Summary Judgment [ECF No. 17] ("Response") is denied.

## BACKGROUND

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of the last name.

[2] Frank Bisignano was appointed as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he automatically is substituted as the named defendant in this case.

## I.     Procedural History

On June 25, 2020, Claimant filed an application for a period of disability and disability insurance benefits. (R.233). Claimant alleged a disability beginning October 24, 2019. (R.233). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.233). A telephone hearing was held on February 3, 2022, at which Claimant was represented by an attorney. (R.233). A vocational expert also testified during the hearing. (R.233). The ALJ issued a decision on April 13, 2022, finding Claimant not disabled under the Social Security Act denying benefits. (R.233-243).

The Social Security Administration Appeals Council denied Claimant's request for review, concluding that additional evidence submitted by Claimant on appeal did "not show a reasonably probability that it would change the outcome of the decision" and therefore the Appeals Council did not exhibit the evidence. (R.1-9). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II.    The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

The Commissioner must determine whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since October 24, 2019, the alleged onset date. (R.236). At step two, the ALJ found Claimant had the following severe impairments: degenerative joint disease of the bilateral knees and left hip; fracture of the left foot; degenerative disc disease of the cervical and lumbar spine; scoliosis of the thoracic spine; coronary artery disease; partial rotator cuff tear in the left shoulder; and bursitis and tendinosis in the right shoulder. (R.236). The ALJ also found Claimant has additional medically determinable impairments of hypertension, hyperlipidemia, antiphospholipid syndrome, anemia, Sjogren's syndrome, Reynaud's disease and peripheral vascular disease. (R.236). In addition, the ALJ found Claimant

3

has been diagnosed with fibromyalgia but concluded the record did not contain the necessary evidence to support a finding of fibromyalgia and therefore considered it a non-medically determined impairment. At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (R.236-237). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she can never climb ladders, ropes, or scaffolds; and can only occasionally climb ramps and stairs, balance, stoop, or crouch; and never kneel or crawl. The claimant can occasionally reach overhead, and frequently reach forward and laterally bilaterally. She can frequently push and pull, and frequently handle and finger bilaterally. The claimant must avoid hazards such as unprotected heights and moving dangerous machinery, must avoid working with vibration, such as vibrating tools and work surfaces, and must avoid walking on slippery or uneven surfaces. She should work indoors in a temperature-controlled environment and should avoid exposure to extreme temperatures.

(R.237-238). At step four, the ALJ found that Claimant was capable of performing her past relevant work as a computer analyst; therefore, the ALJ did not proceed to step five to determine whether Claimant is able to perform any other work existing in significant numbers in the national economy. (R.242). Based on these findings, the ALJ denied Claimant's applications for benefits and found her not disabled under the Social Security Act from October 24, 2019 through the date of the decision. (R.242).

# DISCUSSION

## I.     Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The scope of the judicial review of the Appeals Council's denial depends upon the grounds given by the Appeals Council. *See Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015); *see Ali v. O'Malley*, 2024 WL 1254574, at *2 (N.D. Ill. Mar. 25, 2024) (Kendall, J.). The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). The claimant must also show "good cause for not informing [the Social Security Administration] about or submitting the evidence" sooner. 20 C.F.R. § 416.1470(b). If the Appeals Council denies review because new evidence is "non-qualifying under the regulation"—in other words, not new, material, and time-relevant—the Court conducts a *de novo* review of whether the evidence was relevant under the regulations. *Stepp*, 795 F.3d at 722. If the Court finds that the evidence is new, material, and time-relevant, an error of law exists, and remand may be appropriate. *Id.* (citing *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012)). On the other hand, if the Appeals Council found the new evidence was relevant under the regulatory criteria but denied review because, considering the record, "there is [no] reasonable probability that the additional evidence would change the outcome of the decision," then the Appeals Council's decision not to engage in review is discretionary and unreviewable. *See id.*

## II.  Analysis

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ failed to account for Claimant's non-exertional limitations in the RFC; and (2)

the ALJ's determination that Claimant could perform frequent handling and fingering bilaterally in her hands was not supported by substantial evidence, including because the ALJ failed to consider relevant treatment records. Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 12] ("Motion"). As the Court finds remand is appropriate based on Claimant's second argument, as well as due to legal error by the Appeals Council in deciding not to consider additional treatment records in deciding whether to review the ALJ's decision, it declines to consider Claimant's other arguments.

Claimant argues the ALJ's RFC limitation finding Claimant "could 'frequently' handle and finger bilaterally is unsupported by substantial evidence." Motion [ECF No. 12] at 13. Claimant points to the vocational expert's testimony that limiting the RFC assessment to "occasional" handling and fingering would have been work preclusive as to Claimant's prior relevant employment as a computer analyst. [*Id.*] at 13, 15; *see also* (R.281 (transcript of expert testimony)). Claimant says the ALJ failed to address Claimant's documented limitations in hand functioning, including an opinion from her treating rheumatologist and in his treatment records. [*Id.*] at 13-14. Claimant argues the ALJ made vague references to Claimant's reported strength in upper and lower extremities in examinations and improperly conflated Claimant's ability to engage in daily activities with the ability to perform sedentary work. [*Id.*]

The Commissioner does not dispute that the vocational expert testified that were Claimant restricted to "occasional" handling and fingering, she would be unable to perform her past work as a computer analyst. The Commissioner instead argues

the ALJ "found [Claimant] could do work that involved handling and fingering only frequently – that is, as little as one third of a workday." Response [ECF No. 18] at 7. Thus, the ALJ found Claimant's hand conditions warranted a "frequent" limitation in the RFC. The question before the Court is therefore not whether the evidence supported some limitations in Claimant's hand use while working, but rather whether the RFC's frequent limitation in handling and fingering, as opposed to a more significant restriction which would have preclude her past work, is supported by substantial evidence.[3]

The Commissioner first points to the ALJ's general conclusion that the record did not support Claimant's symptoms were as debilitating as she alleged. Response [ECF No. 18] at 7-8. This general finding as to all of Claimant's symptoms was not specific to her hand pain and the ALJ did not explain how it relates to the "frequent" handling and fingering limitation in the RFC. The Commissioner also notes the ALJ referenced Claimant's testimony that she treats hand pain with medication and occupational therapy, but neither the Commissioner nor the ALJ explains how this treatment supports the "frequent" handling and fingering limitation. [*Id.*] Notably, the ALJ did not address the extent of Claimant's hand functionality with such treatment.

---

[3] The Commissioner also notes the ALJ's findings regarding Claimant's Raynaud's disease, which makes her hands susceptible to temperature extremes, arguing the ALJ "further accommodated plaintiff's hand issues" in the RFC by limiting Claimant to working in controlled temperatures. Response [ECF No. 18] at 7. Claimant does not challenge the evidentiary support for the temperature-related RFC limitation, however, and, as the Commissioner acknowledges, the ALJ described Claimant's hand related conditions beyond those stemming from her Raynaud's disease, including arthritis, general difficulty using her hands, and hand pain. Response [ECF No. 18] at 7 (citing R.238).

The Commissioner also points to the ALJ's finding at Step Three that Claimant had not proven she was unable to use her hands for activities involving gross or fine motor manipulation. Response [ECF No. 18] at 7; *see* (R.237). Claimant does not argue she is unable to use her hands entirely, however, and the Court does not see how this specifically supports the RFC limitation to "frequent" handling and fingering.

The Commissioner also highlights the ALJ's discussion of Claimant's ability to perform certain daily activities, such as swimming and yoga, as well as chores around the house, and says the ALJ found she "continued using her hands to drive, do yardwork, make simple meals, and use a computer." Response [ECF No. 18] at 8. But the ALJ did not make any findings about Claimant's use of her hands to engage in these activities.[4] Without further explanation, the Court does not see how Claimant's ability to swim, do yoga, or drive necessarily shows she could engage in frequent handling and fingering at work. Although the Court could imagine how other activities, such as yardwork, making meals or doing household chores, might involve some handling and fingering, the ALJ does not explain why or to what extent Claimant's ability to engage in these activities translates into her ability to engage in handling and fingering frequently during a workday. The Seventh Circuit has cautioned ALJs that "there are critical differences between keeping up with activities

---

[4] The Commissioner also asserts the ALJ "found that all the evidence (not just plaintiff's daily activities) indicated plaintiff overstated the severity of her hand issues," but again, the ALJ did not make any such finding about Claimant's hand use abilities. Response [ECF No. 18] at 8-9; *see* (R.241). In other words, the Commissioner overstates the ALJ's findings and puts words and analysis in her opinion that simply are not there.

of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home ...").

Claimant's use of a computer at home is certainly relevant to her ability to use her hands to perform her past relevant work as a computer analyst, but the ALJ did not address the extent to which Claimant was able to use a computer in her daily life and did not explain how her home computer use supports an RFC limitation to "frequent" handling and fingering during a workday. Activities of daily living can provide valuable insight into a claimant's functional abilities, but an ALJ must be careful not to go too far and "equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). For all these reasons, the Court will not speculate as to how the ALJ considered Claimant's daily activities in assessing the frequent handling and fingering limitation included in the RFC.

Last, the Commissioner points to the ALJ's citation to examinations showing full strength and normal sensation in her hands, including specifically describing a January 2021 consultative examination by Dr. Kogan which found "normal range of

motion . . . in her bilateral upper and lower extremities," "intact muscle strength in all four extremities, and normal sensation," and noted Claimant "was able to perform a series of fine and gross manipulative activities without difficulty." Response [ECF No. 18] at 7-8; (R.240, 241). The ALJ acknowledged Dr. Kogan found "[C]laimant had 'no difficulty' in standing, bending, sitting, hearing, or with her speech, gait, or fine manipulation and handling of small objects" as well as "'minimal' difficulty lifting and carrying" but found Dr. Kogan's opinion only "partially persuasive" (a finding the Commissioner fails to address) because "the hearing level record shows that the combination of the claimant's impairments . . . likely causes greater functional limitations." (R.241). While the ALJ did not specify as to which functions she disagreed with Dr. Kogan, the ALJ included limitations on handling and fingering in the RFC, suggesting the ALJ did not find persuasive the opinion that Claimant experienced "no difficulty" in certain fine manipulation and handling tasks. To the extent the ALJ did find this aspect of Dr. Kogan's opinion persuasive, the ALJ did not reconcile that with the RFC restriction to only "frequent" handling and fingering.[5]

---

[5] The Commissioner also points to hearing testimony that Claimant was laid off from her previous job during a reduction in force and she continued searching for work afterwards, asserting this "ongoing pursuit of jobs" is inconsistent with Claimant's asserted inability to work and therefore "supports the ALJ's decision that plaintiff's hand pain was not as work-limiting as she suggested." Response [ECF No. 18] at 9-10 n.4. The ALJ noted Claimant worked until April 2019 when she was laid off in a reduction in force (R.238) but did not reference Claimant's job search efforts or articulate the rationale the Commissioner advances to support the ALJ's decision. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). In addition, Claimant alleges her disability began on October 24, 2019, which is six months after she lost her job. The Court will not speculate whether the ALJ's opinion was influenced by the circumstances of Claimant's job loss or her job search efforts given that the ALJ is silent on these points. Instead, the Court, as it must do, bases its decision on the reasoning provided in the ALJ's opinion.

Finally, although Claimant relies on the opinion of Dr. Hozman, her longtime-treating rheumatologist, as support for her argument that her symptoms of diffuse pain in her hands required a greater limitation than a frequent handling and fingering limitation during the workday, the Commissioner does not address Dr. Hozman's opinion in responding to Claimant's arguments regarding her hand use restrictions. Response [ECF No. 18] at 7-11. Dr. Hozman said in his February 1, 2022 Physical RFC Statement that he found Claimant has significant limitations in reaching, handling, and fingering and he limited Claimant to use of her right hand for 10% of an 8-hour workday and use of her fingers on her left and right hands to grasp, turn and twist for 10% of an 8-hour workday. (R.2698-2701).

The ALJ generally found Dr. Hozman's opinion not persuasive, but she did not mention the portion of his opinion addressing Claimant's hand use limitations. (R.241). Elsewhere in the Response, the Commissioner says the ALJ found Dr. Hozman's opinion not persuasive because his "opinion was . . . inconsistent with many of his own notes about treating [Claimant]" and "many treatment notes (including some of Dr. Hozman's) have unremarkable physical exam findings." Response [ECF No. 18] at 6 (citing R.241). The Commissioner again mischaracterizes the ALJ's opinion. The ALJ did not identify any inconsistencies between Dr. Hozman's treatment notes and his opinion. Rather, the ALJ found Dr. Hozman "does not provide *any* medical support for the limitations he describes, and the limitations are inconsistent with the claimant's unremarkable physical examinations." (R.241 (emphasis added)). The ALJ also cited only one of Dr. Hozman's treatment notes, from

December 5, 2018. (R.241 (citing Ex. 8F/6 (R.629)). That progress note reports Claimant complains of "cold fingers, numbness, tingling, stiffness in her joints. She has 7/10 joint pains in her thumbs . . ." and an examination of Claimant's upper extremity joints revealed "TTP to MCPS of first and second digits bilaterally, mild deformity" while also reporting "grip 5/5, 5/5 strength bilaterally in upper and lower extremities." (R.628-629 (Ex. 8F/5-6)). The ALJ did not address the substance of this progress note or explain whether or how the ALJ viewed it to be inconsistent with Dr. Hozman's RFC opinion with respect to Claimant's hand use limitations. (R.241).

There is also the issue of certain other treatment notes from Dr. Hozman identified by Claimant as documenting her hand and joint issues. Claimant argues the ALJ "neglected to mention" those records. [*Id.*] at 4, 14-15, (citing R.223, R.226, R.227, R.298 and R.307); *see also id.,* at n.1 ("[t]he medical record persistently documents pain and swelling in [Claimant's] bilateral hands" but "[t]he ALJ did not include any of these findings in her narration of the medical record."). The Commissioner does not address the substance of those progress notes; instead, the Commissioner says those records were never provided to the ALJ and therefore cannot be considered by the Court. Response [ECF No. 18] at 10 (citing Appeals Council's October 11, 2022 letter which stated "[y]ou submitted medical records (40 submissions in all) from Robert A. Hozman, M.D. (Dated: June 26, 2020 through February 1, 2022; 221 pages)"). On reply, Claimant does not specifically address the Commissioner's argument but continues to assert "the ALJ ignored evidence

favorable to her claim" regarding her hand use. Plaintiff's Reply Brief [ECF No. 20] ("Reply") at 3.

Thus, there appears to be a dispute about whether the ALJ failed to consider these treatment notes from Dr. Hozman or if the records were never provided to the ALJ. The list of exhibits to the ALJ's opinion only includes Dr. Hozman's treatment records from September 2018 through July 17, 2020, as well as a single progress note from February 17, 2021. (R.246-248). The record also includes a letter from Claimant's counsel dated January 27, 2022, about one week before the hearing, reporting that Claimant had requested but had not yet received Dr. Hozman's medical records or Physical RFC. (R.502).

During the hearing, which began at 8:42 a.m. on February 3, 2022, Claimant's counsel stated the record was not complete because Dr. Hozman's office had been having problems with its fax machine and had been unable to fax a copy of his physical RFC opinion to Claimant. (R.251, 254-55). Claimant's counsel stated Dr. Hozman provided a "cellphone picture" of the opinion and counsel had attempted to submit it to the ALJ, although counsel also experienced problems uploading the picture to the court's system. (R.255). Claimant's counsel stated Claimant also had not been able to obtain Dr. Hozman's treatment records. (R.255). Claimant's counsel indicated Dr. Hozman was available to testify, but the ALJ instead said she would accept the file from Dr. Hozman's office, instructing Claimant's counsel to submit it after the hearing. (R.255-256). In her opinion, the ALJ notes she received additional evidence and found the requirements for accepting such evidence had been satisfied,

14

referencing Exhibits 32F and 33F. (R.233). Exhibit 33F appears to be the photograph of Dr. Hozman's RFC opinion referenced during the hearing, while Exhibit 32F is a single progress note from Dr. Hozman dated February 17, 2021. (R.2695-2701). The treatment records cited by Claimant in the Motion were not included in the two exhibits the ALJ added after the hearing.

The Court acknowledges the ALJ's list of exhibits does not include the cited records; however, the record also reflects Claimant experienced difficulties in obtaining and submitting Dr. Hozman's records before the hearing and that at least some of Dr. Hozman's documents were submitted to and accepted by the ALJ after the hearing. Claimant argues the ALJ neglected to address the treatment records cited in the Motion, implying Claimant believes those records were submitted to the ALJ. Motion [ECF No. 12] at 14. Moreover, the records Claimant identifies contain a fax header similar to that in Exhibit 32F, such that the exhibit the ALJ added after the hearing (Ex. 32F) and the additional documents cited by Claimant all appear to have been faxed from Dr. Hozman's office on the day of the hearing. What is unclear is why only one of the progress notes faxed that day made it into the exhibits added by the ALJ after the hearing.[6]

_____

[6] Exhibit 32F is a two-page Progress Note from Dr. Hozman dated February 17, 2021 which includes a fax cover sheet bearing the date of February 1, 2022, as well as a fax header at the top of the document that appears to show the document was faxed from Dr. Hozman's office at 9:56 a.m. on the hearing date (February 3, 2022). (R.2695-2697 (Ex. 32F)). The additional records from Dr. Hozman cited by Claimant in her Motion (R.223, R.226, and R.227) all contain a similar fax header appearing to show the records were faxed from Dr. Hozman's office on the morning and early afternoon of the hearing date (February 3, 2022). (R.223-229). By comparison, the other records submitted to the Appeals Council contain a fax header appearing to show they were faxed from Dr. Hozman's office in July 2022. (R.15-222).

The Commissioner does not address the substance of the records at issue, but these records do describe Claimant's hand pain and related symptoms. (R.223 (June 16, 2021 Progress Note reporting Claimant's "B/L hand pain is bothering her the most" and "[d]iffuse joints pain worse pain in right knee and B/L hands Swelling on B/L hands and left wrist."); R.226 (August 19, 2021 Progress Note reporting complaints of "jt stiffness in her mid and low back, b/l hands mostly in the night"); R.227 (September 15, 2021 Progress Note reporting "Swelling of the hands, knees, and feet"). These records, if they had been submitted to the ALJ, could be inconsistent with the ALJ's finding that Dr. Hozman "does not provide any medical support for the limitations he describes," at least with respect to Claimant's hands.

In light of all of the above, the Court cannot find that substantial evidence supports the ALJ's "frequent" handling and fingering limitation. While the ALJ's opinion references some evidence related to Claimant's functional hand use abilities, there is no explanation for why the ALJ settled on the frequent handling and fingering limitation in the RFC, as compared to no limitation (as arguably suggested by Dr. Kogan's consultative examination) or a more significant limitation (as Dr. Hozman, Claimant's treating rheumatologist, opined). The ALJ cannot simply "split the baby" and arbitrarily choose a functional level of hand use that falls between these two opinions without some explanation as to why she did so. The lack of explanation on this point is particularly significant given the vocational expert's testimony that further restriction to occasional handling and fingering would preclude Claimant's past relevant work.

For all these reasons, the ALJ failed to "articulate in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity," *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), in a way that builds "an accurate and logical bridge from the evidence to the conclusion," *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). *See also Jarnutowski v. Kijakazi*, 48 F.4th 769, 776–77 (7th Cir. 2022) (remand warranted where ALJ failed to explain basis for medium work limitations included in RFC in manner that allowed reviewing court to discern what evidence the ALJ used to reach that conclusion or to follow the ALJ's reasoning); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (holding an ALJ's failure to explain how he or she arrived at RFC conclusions warrants reversal); *Nanet R. v. Kijakazi*, 2023 WL 3479181, at *4 (N.D. Ill. May 16, 2023) (where "ALJ did not logically connect the RFC limitation [of 'frequent' handling and fingering] to medical evidence in the record, the Court finds the limitation to be arbitrary").[7] Moreover, on this record, the Court cannot definitely conclude the additional records from Dr.

---

[7] This is consistent with decisions to remand in other cases where the specified limitation in an RFC are arbitrary or not supported by specific record evidence. *See, e.g., Kia S. v. O'Malley*, 2024 WL 3455026, at *3 (N.D. Ill. July 18, 2024) ("the RFC was not supported by substantial evidence in this case, because the ALJ failed to adequately link evidence to the limitations that she included in the RFC and to explain why she chose those particular levels of limitations"); *Sanchez v. Kijakazi*, 2023 WL 2612481, at *2–3 (N.D. Ill. Mar. 23, 2023) (remanding where "ALJ crafted a very specific RFC limitation based on her own subjective view of plaintiff's [impairment], without tying it to specific record evidence") ("in crafting the RFC limitation, the ALJ appears to have arbitrarily reduced plaintiff's asserted impairment to a degree the ALJ found to be valid" and that "reduction" was "arbitrary because [the ALJ] did not cite to any evidence that would support the very specific RFC limitation she crafted"); *Peissig v. Saul*, 2021 WL 1116477, at *2–3 (E.D. Wis. Mar. 24, 2021) (remanding where ALJ's questioning of vocational expert "simply assumed" claimant's abilities to sit/stand with 10% off task limitation in the hypothetical posed to the expert but "did not explain why the evidence supported a finding that [claimant] would not be off task more than ten percent of the workday when transitioning to sitting or standing").

Hozman addressing Claimant's hand pain symptoms and limitations cited by Claimant were not submitted to the ALJ, and these records may have been inconsistent with the ALJ's reasoning for rejecting Dr. Hozman's opinion regarding Claimant's hand limitations.

The Commissioner's argument in its motion for summary judgment raises another issue, with respect to the Appeals Council decision. Acknowledging a more voluminous set of treatment records from Dr. Hozman was submitted to the Appeals Council, (*see* R.1-4), the Commissioner states in a footnote, "[t]o be sure, sentence six of § 405(g) allows a court to remand the case . . . 'upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Response [ECF No. 18] at 10 n.5. The Commissioner suggests the Court should not remand on that basis here because "plaintiff has not requested such a remand," but does not otherwise address whether Dr. Hozman's treatment records are material or if there was good cause for the failure to include that evidence in the record before the ALJ. [*Id.*] (citing *Jiri K. v. Kijakazi*, 2022 WL 2704058, at *3 (N.D. Ill. July 12, 2022)).[8]

The relevant question the Commissioner does not address is whether the Appeals Council's decision not to consider Dr. Hozman's records is reviewable and if

---

[8] "42 U.S.C. § 405(g) provides that a reviewing court may consider additional evidence only upon a showing that there is new evidence which is material." *Farrell v. Astrue*, 692 F.3d 767, 770–72 (7th Cir. 2012). Evidence that was previously submitted to the Appeals Council is "not 'new' to the district court because it had been already been submitted to, and rejected by, the Appeals Council. Evidence that has been rejected by the Appeals Council cannot be considered to reevaluate the ALJ's factual findings." *Id.* (citing *Rice v. Barnhart,* 384 F.3d 363, 366 n.2 (7th Cir. 2004)). Thus, the evidence that was submitted to the Appeals Council is not "new" to this Court and does not provide a basis for remand under 42 U.S.C. § 405(g).

it warrants remand. *See id.*, 692 F.3d at 770–72 ("whether the ALJ's decision is supported by substantial evidence is not the same question as whether the Appeals Council properly rejected [Claimant's] appeal."). Neither the Commissioner nor Claimant addresses the Appeals Council decision not to consider Dr. Hozman's treatment records.[9]

The Appeals Council addressed the treatment records submitted by Claimant by stating "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (R.2). Courts in this district have found such language amounts to a legal determination that the evidence did not qualify to be considered. *See, e.g., Ali v. O'Malley*, 2024 WL 1254574, at *2–3 (where Appeals Council stated "[w]e find this evidence does not show a reasonable probability that it would change the outcome of the decision" and did not "exhibit this evidence" the Appeals Council decision as to the evidence was

---

[9] The Court recognizes Claimant did not challenge the Appeals Council decision. The Commissioner, however, does not argue Claimant waived any challenge to the Appeals Council decision, and the Commissioner raised the issue of the submission of the treatment records from Dr. Hozman to the Appeals Council. Moreover, the Appeals Council's decision not to consider that evidence amounts to a finding that the records were non-qualifying (as explained above), a legal determination subject to this Court's *de novo* review. In these circumstances, the Court declines in its discretion to find waiver. *See Kristine S. v. Saul*, 2020 WL 4586115, at *7 (N.D. Ill. Aug. 10, 2020) ("These issues require discussion even though Claimant has not addressed them, and the Court therefore takes up the medical expert's testimony on its own motion."); *Jerome S. v. Saul*, 2020 WL 374694, at *10 (N.D. Ill. Jan. 23, 2020) (citing cases) ("Courts can *sua sponte* address issues in social security cases that a party has not raised."); *Mangan v. Colvin*, 2014 WL 4267496, at *1 (N.D. Ill. Aug. 28, 2014) (where Commissioner raised issue in its motion for summary judgment, court entitled to resolve issue notwithstanding plaintiff's failure to respond; "Even if the government had not raised it, a reviewing court may sua sponte address issues in social security cases."). *Cf. Walker v. Baldwin*, 74 F.4th 878, 883 (7th Cir. 2023) ("Whether a waived issue can be addressed 'is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.'") (citations omitted).

"not entirely clear" and "does not discuss whether when rendering the denial, they considered the additional evidence non-qualifying, or considered the record in whole;" therefore, "[e]rring on the side of following the Seventh Circuit's guidance in *Stepp* and *Farrell*, the Court will proceed to review *de novo* the limited question of whether the Appeals Council had erroneously concluded that the additional evidence was non-qualifying."); *Mary C. v. O'Malley*, 2024 WL 1214754, at *3–5 (N.D. Ill. Mar. 21, 2024) (where "Appeals Council stated that it found 'this evidence [did] not show a reasonable probability that it would change the outcome of the decision' and 'thus did not exhibit this evidence'" and "provided no additional explanation of its reasoning or discussion of the report's contents," "[t]he majority of district courts in this circuit have concluded that . . . 'amounted to a rejection of the additional evidence as non-qualifying.'") ("the Court has jurisdiction to review the Appeals Council's conclusion for legal error.").

The Court agrees with the reasoning in those decisions and finds the Appeals Council's decision here regarding the additional treatment records from Dr. Hozman to be a legal decision that is reviewable *de novo*. *Id.*; *Farrell*, 692 F.3d at 771 (citing *Perkins v. Chater*, 107 F.3d 1290 (7th Cir. 1997)). Regulations require the Appeals Council to review a case if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Such additional evidence will only be considered if the party shows "good cause for not informing us about or submitting

—

the evidence" which can include where "unusual, unexpected, or unavoidable circumstance beyond [the party's] control prevented" submission of the evidence earlier, including if the party "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." *Id.* at § 404.970(b)(3)(iv).

There is no dispute that Dr. Hozman's treatment records from July 2020 through the date of the hearing relate to the relevant period, but the record is unclear as to whether these records were "new" within the meaning of the regulation or if Claimant had good cause for not previously submitting this evidence to the ALJ. "Records are 'new' if they were 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015). As discussed above, the record reflects Claimant had requested treatment records from Dr. Hozman, that Claimant informed the ALJ a week before the hearing that she still had not received those records, and Claimant's counsel stated at the hearing that she had still been unable to obtain certain records from Dr. Hozman. *See Potocki o/b/o Potocki v. Berryhill*, 2017 WL 3995816, at *7 (N.D. Ill. Sept. 11, 2017) (" . . . materials were not 'available' to Mr. Potocki within the meaning of the regulation, because while his attorney actively and diligently sought these Naval Reserve records from the National Personnel Records Center, he did not receive them until after the ALJ's opinion"). Based on this record, it appears some of Dr. Hozman's treatment records were not available to Claimant at the hearing, but there is insufficient evidence to determine when Claimant was able to obtain those records.

*See Mary C.*, 2024 WL 1214754, at *6 n.10 ("Although there is not enough information in the record for the Court to determine whether plaintiff showed good cause for not submitting the evidence earlier, skipping this step would nevertheless constitute another error by the Appeals Council requiring remand" where "[n]either plaintiff nor the Commissioner provides any argument (or concession)" as to the good cause inquiry "and the Appeals Council did not mention it in its decision"). As the Court cannot conclusively resolve whether the additional evidence was "new" within the meaning of the regulation, remand is necessary on that question.

Remand is also appropriate because the Court finds Dr. Hozman's additional treatment records are material and there is a reasonable probability this evidence would change the outcome of the decision.[10] "Evidence is 'material' if "there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Cavaricci J. v. Kijakazi*, 2022 WL 1016406, at *4 (N.D. Ill. Apr. 5, 2022) (quoting *Similia v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)).

Dr. Hozman's opinion called for more stringent restrictions on Claimant's use of her hands, including handling and fingering, than the frequent limitation in the ALJ's RFC. The ALJ generally rejected Dr. Hozman's opinion because he "did not provide any medical support for the limitations he describes" and those limitations

---

[10] *See*, *e.g.*, *Joseph R. v. Saul*, 2021 WL 916917, at *3–5 (C.D. Ill. Mar. 10, 2021) ("While the relevant regulations provide that, for the Appeals Council to review a case based on additional evidence, such evidence must be both 'material' and of such a kind that there is a reasonable probability that the ALJ would come to a different decision after considering it, district courts evaluating this issue have found that 'there is no substantive difference between those separate requirements'") (collecting cases).

were inconsistent with Claimant's examinations. (R.241). The additional treatment records from Dr. Hozman contain many references to Claimant's hand pain and related limitations. (*See*, *e.g.*, R.27, 33, 40, 82, 102-104, 106-107, 109, 113-114, 169, 223, 226, 227). These records therefore could have provided the medical support and examination findings the ALJ previously found to be lacking and which had provided the basis for her rejection of Dr. Hozman's opinion. Accordingly, there is a reasonable probability this evidence would change the outcome of the decision because it would "fill the evidentiary gap" identified by the ALJ. *See Farrell*, 692 F.3d at 771–72 (additional evidence was material where "the ALJ's decision unequivocally rest[ed] in part on the determination that there [was] no evidence that [a] ... diagnosis ha[d] been confirmed" and the "new evidence fill[ed] in that evidentiary gap by providing exactly that confirmation," which could change the ALJ's assessment of the applicant's RFC).

In addition, Dr. Hozman's opinion included a more extensive hand use limitation than the ALJ had included in the RFC. The vocational expert testified that if Claimant's hand use were further restricted, she would be unable to perform her past work as a computer analyst. *See Mary C.*, 2024 WL 1214754, at *5–8 (doctor's opinion as to additional off-task and absenteeism restrictions would be material based on vocational expert's testimony at hearing). Thus, Dr. Hozman's additional treatment records could have altered the ALJ's consideration of the stronger restrictions in Dr. Hozman's opinion, and, in turn, resulted in a more restrictive RFC provision on hand use, which could have changed the ALJ's Step Four finding that

Claimant could perform her past work. For all these reasons, the additional records from Dr. Hozman that were submitted to the Appeals Council are material and there is a reasonable probability this evidence would change the outcome of the decision. The Appeals Council erred in finding this additional evidence to be non-qualifying and therefore failing to consider this evidence in reviewing Claimant's case.

Finally, the Appeals Council error was not harmless. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'") (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). "An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Wilder*, 22 F.4th at 654 (internal citations omitted). Here, the Court cannot predict with great confidence the effect that consideration of Dr. Hozman's treatment records documenting Claimant's hand pain and related symptoms would have on the ALJ's finding that Claimant was capable of performing past relevant work requiring frequent handling and fingering, particularly in light of the vocational expert's testimony that further restrictions on Claimant's hand use would preclude such work. Nor can the Court predict how the ALJ would have evaluated Dr. Hozman's opinion with the benefit of an additional year and a half of the doctor's treatment records from July 2020 through the hearing date. For these reasons, the Appeals Council error in dismissing the

additional treatment records as non-qualifying and thus not considering these records in deciding whether to review the ALJ's decision was not harmless.

Accordingly, remand to the agency is warranted.

## CONCLUSION

Accordingly, for all the reasons set forth above, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 12] is granted, and the Defendant's Motion for Summary Judgment [ECF No. 17] is denied.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 14, 2025